[No. S064388. Aug. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS CASTELLANOS, Defendant and Appellant.

## COUNSEL

Richard L. Fitzer, under appointment by the Supreme Court, for Defendant and Appellant.

Brissman & Schlueter, Peter B. Schlueter and Jon R. Schlueter as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster, Steven D. Matthews, John R. Gorey and Lawrence M. Daniels, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Following defendant Luis Castellanos's conviction of a series of criminal offenses, the trial court ordered him to register as a sex offender pursuant to a provision in Penal Code section 290 that became effective after defendant committed those offenses. The Court of Appeal struck the trial court's order, concluding that requiring defendant to register as a sex offender violates the ex post facto clauses of the federal and California Constitutions (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9). We disagree. As explained below, the trial court's order is valid because the requirement that a person register as a sex offender does not constitute punishment for purposes of ex post facto analysis.

I

In April 1994, defendant introduced himself to a member of the women's basketball team at Glendale College and subsequently appeared at her house. She allowed defendant to enter the residence but said she was getting ready to leave (which was not true) and left him in the living room for "a minute or two" while she went upstairs to get her keys. Then both she and defendant left the house. The student went to her automobile and defendant appeared to go to his. She drove around the block, parked, and walked back to her house "through the back way" in order to avoid defendant if he still was present. As she approached her house, she saw defendant inside, replacing a screen on a window. She went to her grandmother's house and called the police.

The police arrested defendant the following day while he was attending a class at Glendale College. Defendant was carrying twenty-six $100 bills. In his locker, he had a three-month-old sports section of a local newspaper that contained an article that mentioned the student. In his backpack, police found a set of keys that belonged to a teacher at Glendale College, an address book, and a list of names of 14- and 15-year-old girls.

Defendant made a detailed confession. He explained that he had determined where the student lived by peering over her shoulder as she filled out

a form at the library, and had memorized her address. While he was inside her residence and she was upstairs retrieving her keys, he unlocked a window and opened it a few inches. He left the house and pretended to go to his automobile, but when the student was out of sight he returned to her residence and climbed in through the window he had opened. After entering her bedroom, he stole a pair of her panties "as a memento of his contact" with her.

Defendant admitted that this was not his first burglary and that he had burglarized the homes of many of the girls named on the list found in his backpack. Each time, he took a pair of the girl's panties. Often, he also took money and photographs of the girl. He consented to have the police search the premises where he lived with his mother. At defendant's direction, the police looked inside a crawl space above the closet in defendant's bedroom and found, buried in the insulation, a trashbag that contained 27 pairs of women's panties, numerous photographs of teenage girls, and some pubic hairs in plastic bags with notes identifying their sources.

The police contacted the girls involved. Many had not known that their property had been taken, but identified their underwear and photographs. Others had noticed that money was missing, usually in amounts close to $100, but had not suspected a burglary had occurred. On one occasion, $2,720 had been taken.

Defendant was convicted of 13 counts of first degree burglary in violation of Penal Code section 459[1] and 3 counts of receiving stolen property in violation of section 496, subdivision (a). He was sentenced to a term of 14 years in prison and ordered to register as a sex offender, pursuant to section 290, upon his release from custody.

Defendant argued on appeal that requiring him to register as a sex offender violates the ex post facto clauses of the federal and California Constitutions, because the provision in section 290 that requires him to register took effect after he committed the offenses of which he was convicted. The Court of Appeal agreed and modified the judgment of conviction by striking the order requiring defendant to register as a sex offender, stating it was bound by this court's decision in *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216].

## II

At the time defendant committed the present offenses in 1993 and 1994, section 290 required a person convicted of an enumerated sex-related crime

---

[1]All further undesignated statutory references are to the Penal Code.

to register as a sex offender. The registration requirement is lifelong, and includes furnishing to the chief of police of the city in which the offender resides (or to the sheriff of the county, if the offender resides in an unincorporated area) a written statement, fingerprints, and a photograph, which are forwarded to the California Department of Justice. Failure to register is a criminal offense. "The purpose of section 290 is 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' [Citations.]" (*In re Reed*, *supra*, 33 Cal.3d 914, 919.) The crimes enumerated in former section 290 included rape, sodomy, and oral copulation, but did not include the crimes of burglary and receiving stolen property committed by defendant.

On January 1, 1995 (after defendant committed the present offenses, but before he was convicted), an amendment to section 290 took effect that, among other changes, added subdivision (a)(2)(E), which broadened the scope of the statute by requiring registration upon conviction of "any offense . . . if the court finds at the time of conviction that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratifica-tion."[2] The trial court ordered defendant to register as a sex offender pursuant to this provision. As noted above, the Court of Appeal struck the trial court's order, holding that it violated the ex post facto clauses of the federal and state Constitutions.

■ Article I, section 10, clause 1 of the federal Constitution states in pertinent part: "No state shall . . . pass any . . . ex post facto law . . . ." Article I, section 9 of the California Constitution similarly states that an "ex post facto law . . . may not be passed." The California provision is analyzed in the same manner as its federal counterpart. (*People* v. *Grant* (1999) 20 Cal.4th 150, 158 [83 Cal.Rptr.2d 295, 973 P.2d 72]; *People* v. *McVickers* (1992) 4 Cal.4th 81, 86 [13 Cal.Rptr.2d 850, 840 P.2d 955]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 295-296 [279 Cal.Rptr. 592, 807 P.2d 434].)

More than 200 years ago, in *Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650], the United States Supreme Court discussed the

---

[2]As enacted, subdivision (a)(2)(E) of section 290 included among the persons required to register as a sex offender: "Any person ordered by any court to register pursuant to this section for any offense not included specifically in this section if the court finds at the time of conviction that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (Stats. 1994, ch. 867, § 2.7.) The section later was amended to provide that the required finding could be made at the time of conviction or sentencing. (Stats. 1998, ch. 930, § 1.1.)

meaning of the federal ex post facto clause: "The prohibition, in the letter, is not to pass any law concerning, and after the fact; but the plain and obvious meaning and intention of the prohibition is this; that the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it." The court then listed the type of laws that were ex post facto laws: "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. . . ." (*Ibid.*)

In *Collins* v. *Youngblood* (1990) 497 U.S. 37, 41 [110 S.Ct. 2715, 2718, 111 L.Ed.2d 30], the high court reaffirmed this interpretation of the ex post facto clause: "Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." Relying upon the decision in *Calder* v. *Bull, supra,* 3 U.S. (3 Dall.) 386, the high court restated the prohibition of the ex post facto clause in simple terms: "Legislatures may not retroactively alter the definition of crime or increase the punishment for criminal acts." (*Collins* v. *Youngblood, supra,* 497 U.S. 37, 43 [110 S.Ct. 2715, 2719].)

In the present case, the amendment to section 290 that took effect after defendant committed the charged offenses did not alter the definition of the crimes of which defendant was convicted, but it did require defendant to register as a sex offender. Accordingly, application of this amendment to defendant would violate the ex post facto clauses of the federal and state Constitutions only if the sex offender registration requirement constitutes an increase in the punishment for defendant's criminal acts.[3]

In *People* v. *McVickers, supra,* 4 Cal.4th 81, we held that requiring a defendant convicted of certain sex offenses to provide a blood sample for AIDS testing did not constitute punishment for purposes of ex post facto analysis. We observed that "the ex post facto clause prohibits not just a *burden* but a more burdensome *punishment*." (*Id.* at p. 84, italics in original.)

---

[3]In *People* v. *Franklin* (1999) 20 Cal.4th 249, 253 and footnote 2 [84 Cal.Rptr.2d 241, 975 P.2d 30], we held that "failure to comply with California's sex offender registration law constitutes a penal offense," but "express[ed] no opinion on whether the obligation that a person register as a sex offender, imposed as a consequence of a conviction of a criminal offense, constitutes punishment for purposes of ex post facto analysis," noting that that issue is before us in the present case.

Noting that the decision in *Collins* v. *Youngblood, supra,* 497 U.S. 37, "furnishes no definitive answer to the question of the meaning of punishment" (*People* v. *McVickers, supra,* 4 Cal.4th 81, 85), we turned for guidance to earlier federal cases, including the decision in *Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144 [83 S.Ct. 554, 9 L.Ed.2d 644], and concluded that requiring a defendant to provide a blood sample for AIDS testing may be a burden, but it does not constitute punishment for purposes of ex post facto analysis, because neither the purpose nor the effect of the provision is punitive. To the contrary, the AIDS testing provision "has a legitimate nonpunitive governmental purpose." (*People* v. *McVickers, supra,* 4 Cal.4th 81, 89.)

In so holding, we twice cited the decision of the Arizona Supreme Court in *State* v. *Noble* (1992) 171 Ariz. 171 [829 P.2d 1217] that "held that a statute requiring registration of sex offenders did not violate the ban on ex post facto legislation as applied to a defendant whose crimes preceded its enactment because the overriding purpose of the statute was 'facilitating the location of child sex offenders by law enforcement personnel,' a purpose unrelated to punishment. [Citation.]" (*People* v. *McVickers, supra,* 4 Cal.4th 81, 87, 89.)

The Arizona Supreme Court is not alone in concluding that a sex offender registration requirement does not constitute punishment for purposes of ex post facto analysis. As recognized by the Court of Appeal in *People* v. *Fioretti* (1997) 54 Cal.App.4th 1209, 1214 [63 Cal.Rptr.2d 367], "[V]irtually every court recently considering sex offender registration laws has held that these requirements are regulatory rather than punitive. (See, e.g., *Kitze* v. *Com.* (1996) 23 Va.App. 213 [475 S.E.2d 830]; *Opinion of the Justices to the Senate* (1996) 423 Mass. 1201 [668 N.E.2d 738]; *State* v. *Myers* (1996) 260 Kan. 669 [923 P.2d 1024]; *Artway* v. *Attorney General of State of N.J.* (3d Cir. 1996) 81 F.3d 1235, 1267; *State* v. *Noble* (1992) 171 Ariz. 171 [829 P.2d 1217,. 1219-1220]; *State* v. *Ward* (1994) 123 Wn.2d 488 [869 P.2d 1062].)" (See also *Doe* v. *Pataki* (2d Cir. 1997) 120 F.3d 1263; *State* v. *Burr* (N.D. 1999) 598 N.W.2d 147; *State* v. *Pickens* (Iowa 1997) 558 N.W.2d 396; *Doe* v. *Poritz* (1995) 142 N.J. 1 [662 A.2d 367, 36 A.L.R.5th 711]; *State* v. *Costello* (1994) 138 N.H. 587 [643 A.2d 531]; *State* v. *Manning* (Minn.Ct.App. 1995) 532 N.W.2d 244.)

Six months after our decision in *McVickers,* the United States Supreme Court decided *Austin* v. *United States* (1993) 509 U.S. 602 [113 S.Ct. 2801, 125 L.Ed.2d 488]. The issue in the *Austin* case was whether a civil forfeiture under 21 United States Code section 881(a)(4) and (7) of property used to facilitate the transportation or possession of controlled substances (in

that case a mobilehome and an automobile repair shop) constituted an excessive fine prohibited by the Eighth Amendment of the United States Constitution. The question turned on whether the forfeiture constituted punishment: "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.' [Citation.] 'The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.' [Citation.] 'It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties.' [Citations.] Thus, the question is . . . whether [the forfeiture] is punishment." (*Austin* v. *United States, supra*, 509 U.S. 602, 609-610 [113 S.Ct. 2801, 2805-2806], fn. omitted, italics in original.)[4]

Reviewing the history of forfeiture provisions in both England and the United States, the court in *Austin* concluded "that forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." (*Austin* v. *United States, supra*, 509 U.S. 602, 618 [113 S.Ct. 2801, 2810], fn. omitted.) The court then examined the federal statutes at issue and found "nothing in these provisions or their legislative history to contradict the historical understanding of forfeiture as punishment." (*Id.* at p. 619 [113 S.Ct. at p. 2810].) Having determined that forfeiture constituted punishment within the meaning of the excessive fines clause of the Eighth Amendment, the court remanded the matter to the lower court for a determination of whether the forfeiture or fine in that case was "excessive." (509 U.S. at pp. 622-623 [113 S.Ct. at p. 2812].)

In *United States* v. *Ursery* (1996) 518 U.S. 267 [116 S.Ct. 2135, 135 L.Ed.2d 549], the United States Supreme Court adopted a different approach to determining what constitutes punishment, holding that the double jeopardy clause of the Fifth Amendment of the United States Constitution did not preclude "the Government from both punishing a defendant for a criminal offense and forfeiting his property for that same offense in a separate civil

---

[4]In addressing this question, the high court explained that the decisions in *Kennedy* v. *Mendoza-Martinez, supra*, 372 U.S. 144, and *United States* v. *Ward* (1980) 448 U.S. 242 [100 S.Ct. 2636, 65 L.Ed.2d 742] did not govern the determination of whether a provision constitutes punishment for purposes of the excessive fines clause of the Eighth Amendment: "The question in those cases was whether a nominally civil penalty should be reclassified as criminal and the safeguards that attend a criminal prosecution should be required. [Citations.] In addressing the separate question whether punishment is being imposed, the Court has not employed the tests articulated in *Mendoza-Martinez* and *Ward*. [Citation.]" (*Austin* v. *United States, supra*, 509 U.S. 602, 610, fn. 6 [113 S.Ct. 2801, 2806].) The court focused, instead, upon "whether, at the time the Eighth Amendment was ratified, forfeiture was understood at least in part as punishment and whether forfeiture under §§ 881(a)(4) and (a)(7) should be so understood today." (*Id.* at pp. 610-611 [113 S.Ct. at p. 2806].)

proceeding." (518 U.S. at p. 270 [116 S.Ct. at p. 2138, 135 L.Ed.2d at p. 557].) The high court held that, unlike an in personam penalty such as a fine that may constitute punishment, the in rem civil forfeiture of property there at issue never has been considered punitive within the meaning of the double jeopardy clause. The court examined the history of in rem civil forfeitures and observed that, from the earliest times, such forfeitures have been allowed in addition to any related criminal penalties. Ultimately, the court employed a two-part test, asking whether Congress intended the forfeiture proceedings to be criminal or civil, and then considering "whether the proceedings are so punitive in fact as to 'persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite Congress' intent. [Citation.]" (*Id.* at p. 288 [116 S.Ct. at p. 2147, 135 L.Ed.2d at p. 568].) Employing this test, the court upheld the civil in rem forfeiture in that case, stating: "[*I*]n rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause." (*Id.* at p. 278 [116 S.Ct. at p. 2142, 135 L.Ed.2d at p. 562].)

The court in *Ursery* distinguished its holding in *Austin* on the basis that *Austin* involved the excessive fines clause of the Eighth Amendment, rather than the double jeopardy clause of the Fifth Amendment. The high court explained that the double jeopardy clause prohibits all types of successive punishment. Thus, the court earlier had held in *United States* v. *Halper* (1989) 490 U.S. 435, 442 [109 S.Ct. 1892, 1898, 104 L.Ed.2d 487] that imposition of an in personam civil penalty following the imposition of criminal penalties could violate the double jeopardy clause if the civil penalty is "so extreme and so divorced from the Government's damages and expenses as to constitute punishment." The Eighth Amendment, by contrast, prohibits only those fines that are "excessive." Therefore, "it appears to make little practical difference whether the Excessive Fines Clause applies to all forfeitures . . . or only to those that cannot be characterized as purely remedial," because the excessive fines clause "prohibits only the imposition of 'excessive' fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event." (*Austin* v. *United States, supra,* 509 U.S. 602, 622, fn. 14 [113 S.Ct. 2801, 2812].) Thus, the method of analysis under the double jeopardy clause differs from that applicable to the excessive fines clause, but both involve the same consideration of whether the penalty serves purely remedial purposes.

In *Kansas* v. *Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501], the United States Supreme Court held that civil commitment under Kansas's Sexually Violent Predator Act based upon past conduct for which the offender has been convicted and punished does not violate the double jeopardy clause or the ex post facto clause, because such civil commitment

does not constitute punishment for purposes of either constitutional provision. The first question considered by the court was "whether the legislature meant the statute to establish 'civil' proceedings. If so, we ordinarily defer to the legislature's stated intent." (*Id.* at p. 361 [117 S.Ct. at p. 2082, 138 L.Ed.2d at p. 514].) The court found such a legislative intent, adding: "Although we recognize that a 'civil label is not always dispositive,' [citation], we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' [Citation.]" (*Ibid.* [117 S.Ct. at p. 2082, 138 L.Ed.2d at p. 515].) The high court concluded the offender had "failed to satisfy this heavy burden" (*ibid.*), observing that the state "is not seeking retribution for a past misdeed" (*id.* at p. 362 [117 S.Ct. at p. 2082, 138 L.Ed.2d at p. 515]), but is acting to protect the public from "the dangerously mentally ill." (*Id.* at p. 363 [117 S.Ct. at p. 2083, 138 L.Ed.2d at p. 516].) Concluding that it could not say that the state "acted with punitive intent" in enacting the Sexually Violent Predator Act, the court held "that the Act does not establish criminal proceedings and that involuntary confinement pursuant to the Act is not punitive" within the meaning of the double jeopardy clause or the ex post facto clause. (*Id.* at p. 369 [117 S.Ct. at p. 2085, 138 L.Ed.2d at p. 519].)

None of the United States Supreme Court decisions discussed above address the precise issue before us. And the method of analyzing what constitutes punishment varies depending upon the context in which the question arises. But two factors appear important in each case: whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent.[5] In making these determinations in the present case, we are guided by our recent

---

[5]Although, as we have noted, virtually every other court that has addressed the issue has concluded that sex offender registration does not constitute "punishment" for purposes of the ex post facto clause, there is some disagreement in the cases as to whether the multifactor test articulated in *Kennedy* v. *Mendoza-Martinez, supra,* 372 U.S. 144, applies in this context. (Compare *Artway* v. *Attorney General of State of N.J.* (3d Cir. 1996) 81 F.3d 1235, 1261-1263 [questioning applicability of *Mendoza-Martinez*]; *Opinion of the Justices to the Senate* (1996) 423 Mass. 1201 [668 N.E.2d 738, 749] [same]; *Doe* v. *Poritz, supra,* 662 A.2d 367, 399-404 [same] with *State* v. *Noble, supra,* 829 P.2d 1217, 1221-1224 [applying *Mendoza-Martinez* factors]; *State* v. *Ward* (1994) 123 Wn.2d 488 [869 P.2d 1062, 1068-1074] [same]; *State* v. *Myers* (1996) 260 Kan. 669 [923 P.2d 1024, 1033-1043] [same].) Other courts have reached the same conclusion without discussing the applicability or inapplicability of the *Mendoza-Martinez* factors. (See, e.g., *Kitze* v. *Com.* (1996) 23 Va.App. 213 [475 S.E.2d 830, 832-833]; *State* v. *Costello, supra,* 643 A.2d 531.)

We believe there is no need to resolve that issue here, because all of the cases recognize that the two factors noted above—whether the Legislature intended the provision to constitute punishment, and, if not, whether the provision is nonetheless so punitive in nature and effect

decisions in *McVickers* and *Wright* v. *Superior Court* (1997) 15 Cal.4th 521 [63 Cal.Rptr.2d 322, 936 P.2d 101].

■ As noted above, we held in *People* v. *McVickers*, *supra*, 4 Cal.4th 81, 88, that requiring a defendant to provide a blood sample for AIDS testing imposes a burden, but is not punitive in nature. We held that the statutes there under review "have a legitimate purpose other than punishment . . . [and] the method chosen—a mandatory AIDS test with results given only to the defendant and to law enforcement officials—is not excessive in relation to the statute's asserted purpose." (*Id.* at p. 89.) Similarly, in the present case, requiring a defendant to register as a sex offender certainly imposes a burden, but whether the registration requirement constitutes punishment for purposes of ex post facto analysis depends upon whether the purpose or effect of this requirement is punitive in nature.

■ In *Wright* v. *Superior Court*, *supra*, 15 Cal.4th 521, we recently examined the nature of the sex offender registration requirement imposed by section 290, albeit in another context. We held in *Wright* that failure to register as required by section 290 is a continuing offense. In so holding, we observed that the sex offender registration requirement "is intended to promote the ' "state interest in controlling crime and preventing recidivism in sex offenders." ' [Citation.] As this court consistently has reiterated: 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' [Citations.] . . . [¶] . . . The statute is thus regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts." (15 Cal.4th at p. 527.)

■ The sex offender registration requirement serves an important and proper remedial purpose, and it does not appear that the Legislature intended the registration requirement to constitute punishment. Nor is the sex offender registration requirement so punitive in fact that it must be regarded as punishment, despite the Legislature's contrary intent. Although registration imposes a substantial burden on the convicted offender, this burden is no more onerous than necessary to achieve the purpose of the statute.[6] We conclude that the sex offender registration requirement imposed by section 290 does not constitute punishment for purposes of ex post facto analysis.

---

that it must be found to constitute punishment despite the Legislature's contrary intent—are the crucial elements to be considered.

[6]It does not appear that defendant is subject to the public notification provisions of section 290, subdivisions (m) and (n), and section 290.4, and we express no opinion regarding the effect, if any, that application of those provisions would have upon our analysis.

The Court of Appeal reached the opposite conclusion, because it felt bound by this court's decision in *In re Reed, supra,* 33 Cal.3d 914.[7] We held in *Reed* that requiring a person convicted of the *misdemeanor offense of soliciting "lewd or dissolute conduct" in violation of section 647, subdivision (a),* to register as a sex offender constitutes cruel or unusual punishment under the California Constitution (Cal. Const., art. I, § 17).[8] In concluding that sex offender registration constitutes punishment for purposes of cruel or unusual punishment analysis, this court applied the factors discussed in *Kennedy* v. *Mendoza-Martinez, supra,* 372 U.S. 144 and concluded that the registration requirement is "an affirmative disability or restraint." (*In re Reed, supra,* 33 Cal.3d 914, 920.) The court in *Reed* recognized that sex offender registration has not " 'historically been regarded as punishment,' " but found that was "not dispositive." (*Id.* at p. 921.) The court also stated that registration comes into play only on a finding of scienter, that it promotes the traditional aims of punishment, and that the behavior to which it applies already is a crime. Turning to whether the requirement has " 'an alternative purpose' " other than punishment, the court in *Reed* recognized that "the Legislature may reasonably have intended that sex offender registration serve as a law enforcement tool to facilitate criminal investigations," but questioned whether it is "effective in practice" and found this factor was "outweighed here by the fact that the penalty of registration is '*excessive* in relation to the alternative purpose assigned' to it." (*Id.* at p. 922, fn. omitted, italics in original.)

As noted above, subsequent to our decision in *Reed,* the United States Supreme Court elaborated upon and refined the criteria to be considered in determining whether a provision should be considered "punishment" for purposes of ex post facto analysis (see, e.g., *Kansas* v. *Hendricks, supra,* 521 U.S. 346, 361-369 [117 S.Ct. 2072, 2081-2086, 138 L.Ed.2d at pp. 515-519] [indefinite civil commitment of a sexually violent offender does not constitute punishment for ex post facto purposes]), and our court also has spoken

---

[7]Although defendant argued successfully in the Court of Appeal that requiring him to register as a sex offender violates the ex post facto clauses of the California and federal Constitutions, causing the Court of Appeal to strike the registration order, defendant now concedes that "the trial court's order requiring appellant to register as a sex offender does not violate this Court's construction of the ex post facto clause." Defendant reasons that "[i]n light of this Court's recent opinion in *Wright* v. *Superior Court* (1997) 15 Cal.4th 521, it appears that this Court has already overruled the holding of *In re Reed* (1983) 33 Cal.3d 914." Defendant goes on to argue, however, that "[n]othing in the federal Constitution requires that *Reed* be overruled," citing *Collins, Austin,* and *Ursery.* On this issue, the gauntlet has been picked up by amicus curiae, which argues that our decision in *Reed* compels the conclusion that the trial court's order violates the ex post facto clauses of both the federal and California Constitutions.

[8]Two years later, the Legislature amended section 290 to delete the registration requirement for persons convicted of violating section 647, subdivision (a). (Stats. 1985, ch. 929, § 4, p. 2936, ch. 1474, § 1, p. 5403.)

directly to the issue (see, e.g., *People* v. *McVickers, supra,* 4 Cal.4th 81 [requiring a convicted felon to submit to an AIDS test does not constitute punishment for ex post facto purposes]). Upon reexamination of the decision in *Reed* in light of these more recent cases, we conclude that *Reed* should be disapproved to the extent that decision can be interpreted as suggesting that sex offender registration constitutes punishment for purposes of ex post facto analysis.

To begin with, in this context, we believe it is appropriate to place greater emphasis than did the court in *In re Reed, supra,* on the circumstance that sex offender registration has not " 'historically been regarded as punishment.' " (33 Cal.3d at p. 920.) While not dispositive, this factor is of great importance, because it supports the conclusions that the Legislature did not intend the provision to constitute punishment and that the provision is not punitive in nature. As noted above, virtually every other jurisdiction that has passed on the question has concluded that sex registration provisions are regulatory rather than punitive, and do not constitute punishment for purposes of the ex post facto doctrine. (See *ante,* at p. 792.) As we have explained, our recent decision in *Wright* v. *Superior Court, supra,* 15 Cal.4th 421, makes it clear that the registration provision is regulatory in nature.

Second, because the question at issue in *In re Reed, supra,* involved whether sex registration was "cruel or unusual punishment" as applied to the misdemeanor solicitation conviction of which the defendant in that case had been convicted, the court in *Reed* directed much of its consideration to whether the registration requirement was "excessive" in light of a statement made by the Los Angeles City Attorney, who appeared as amicus curiae in *Reed.* This statement maintained that "mandatory registration *of section 647(a) misdemeanants* as sex offenders is 'dysfunctional,' " because it overloads law enforcement computers with useless information and imposes a disability out of proportion to the relatively minor offense that triggered its application. (33 Cal.3d at p. 922, fn. 7, italics added.) These considerations do not apply in the present case. Further, because *Reed* addressed a claim of cruel or unusual punishment, the central issue was whether the registration requirement was excessive or disproportionate *to the severity of the offenses* committed by the defendant in *Reed.* The present case, by contrast, involves an ex post facto claim in which the excessiveness of the registration requirement *in relation to its purpose* is only one factor of several to be considered.

Accordingly, to the extent that the analysis in *Reed* can be understood, as the Court of Appeal in the present case viewed that decision,

to indicate that the sex offender registration requirement should be considered "punishment" for purposes of ex post facto analysis, *Reed*'s analysis is disapproved.[9] .

█ In sum, we conclude that sex offender registration does not constitute punishment for purposes of ex post facto analysis, because the Legislature did not intend such registration to constitute punishment and the provision is not so punitive in nature or effect that it must be held to constitute punishment despite the Legislature's contrary intent.

### III

Defendant additionally contends that even if requiring him to register as a sex offender does not violate the ex post facto clause, the trial court's order nonetheless is invalid, because the court failed to state its reasons for ordering him to register as a sex offender as required by section 290, subdivision (a)(2)(E). As noted above, this subdivision requires persons convicted of an offense not specified in section 290 to register as a sex offender "if the court finds . . . that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." Subdivision (a)(2)(E) further provides: "The court shall state on the record the reasons for its findings and the reasons for requiring registration."

Although defendant raised this issue on appeal, the Court of Appeal expressly declined to reach the issue, because of its decision striking the trial court's order requiring sex offender registration as violative of the ex post facto clause. On remand, the Court of Appeal should consider this issue.

### IV

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed in this opinion.

Baxter, J., and Chin, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.— █ Defendant here is subject to a requirement, enacted after he committed the crimes of which he

---

[9]Our statement in *People* v. *McClellan* (1993) 6 Cal.4th 367, 380 [24 Cal.Rptr.2d 739, 862 P.2d 739] that sex offender registration is an "element of punishment for the underlying offense" (in the context of a plea agreement) does not alter our analysis. That statement in *McClellan* was based upon an earlier citation to *Reed*. (6 Cal.4th at p. 374.) The decision in *McClellan* did not address whether the sex offender registration requirement imposed by section 290 constitutes punishment, and "an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

was convicted, that he register as a sex offender. I conclude, as does the lead opinion, that the sex offender registration requirement imposed on defendant is not a punishment and thus does not violate the United States Constitution's prohibition against ex post facto laws. I do not join the lead opinion, however, because it misdescribes the United States Supreme Court's current jurisprudence interpreting the ex post facto clause. I write separately to forestall the mischief this misdescription threatens to work in future cases.

I

The United States Constitution forbids states from enacting ex post facto laws—laws that impose punishment for conduct occurring before the law was enacted. (U.S. Const., art. I, § 10.) At issue in this case is whether the sex offender registration requirement imposed on defendant violates the ex post facto prohibition. Because the Legislature expanded the registration requirement to include the crimes committed by defendant only after he committed those crimes, it is not disputed that the requirement violates the ex post facto prohibition *if* it is a form of punishment.

The lead opinion concludes that the registration requirement is not punishment; in doing so, it cites to United States Supreme Court precedent interpreting the meaning of punishment under the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment and excessive fines. In addition, the lead opinion refuses to apply the multifactor test of punishment first articulated in *Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144 [83 S.Ct. 554, 9 L.Ed.2d 644] (hereafter the *Mendoza-Martinez* factors) and subsequently applied in numerous high court decisions. Although I, too, conclude that the registration requirement is not punishment, in my view the United States Supreme Court has laid out a different path of analysis for us to follow.

The United States Supreme Court has concluded that punishment has the same meaning for both ex post facto and double jeopardy purposes. In *Kansas* v. *Hendricks* (1997) 521 U.S. 346, 361 [117 S.Ct. 2072, 2081-2082, 138 L.Ed.2d 501], the high court applied a single test to determine that the involuntary civil commitment of a sex offender after the end of his criminal imprisonment was not punishment either for ex post facto or double jeopardy purposes.

The United States Supreme Court has also made clear that the concept of punishment has a meaning that varies in the context of different constitutional provisions. In particular, punishment has a different and broader meaning under the Eighth Amendment than it does for purposes of ex post

facto, double jeopardy, and other constitutional provisions. In *United States* v. *Ursery* (1996) 518 U.S. 267, 286-287 [116 S.Ct. 2135, 2146-2147, 135 L.Ed.2d 549], the high court distinguished between the meaning of punishment under the double jeopardy clause of the Fifth Amendment and its different meaning under the excessive fines clause of the Eighth Amendment. In that decision, the high court held that civil forfeitures were not punishment for purposes of the Fifth Amendment double jeopardy clause even though they were punishment subject to scrutiny under the Eighth Amendment. (518 U.S. at pp. 286-287, 292 [116 S.Ct. at pp. 2146-2147, 2149].) The definition of punishment under the Eighth Amendment is a broad one, and encompasses some sanctions whose purpose is both remedial as well as punitive and some that are imposed in civil proceedings. (*Austin* v. *United States* (1993) 509 U.S. 602 [113 S.Ct. 2801, 125 L.Ed.2d 488].)

The lead opinion's reliance in this ex post facto case on Eighth Amendment decisions such as *Austin* v. *United States, supra,* 509 U.S. 602, is thus misplaced. Instead, the proper test of punishment in this case is the one the high court has applied in double jeopardy and ex post facto cases.

The test of whether a government sanction is punishment for ex post facto and double jeopardy purposes has two parts. The first question is whether the legislature intended the sanction to be civil or criminal. "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. [Citation.] A court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " (*Hudson* v. *United States* (1997) 522 U.S. 93, 99 [118 S.Ct. 488, 493, 139 L.Ed.2d 450].) The high court has viewed the civil or criminal character of the proceedings in which the sanction is imposed as a central and powerful indicium of legislative intent. (*Kansas* v. *Hendricks, supra,* 521 U.S. 346, 361 [117 S.Ct. 2072, 2081-2082] ["We must initially ascertain whether the legislature meant the statute to establish 'civil' proceedings."]; accord, *United States* v. *Ursery, supra,* 518 U.S. 267, 288 [116 S.Ct. 2135, 2147] ["First, we ask whether Congress intended proceedings [for forfeiture] . . . to be criminal or civil."]; *United States* v. *One Assortment of 89 Firearms* (1984) 465 U.S. 354, 362 [104 S.Ct. 1099, 1104-1105, 79 L.Ed.2d 361]; *United States* v. *Ward* (1980) 448 U.S. 242, 248 [100 S.Ct. 2636, 2641, 65 L.Ed.2d 742].)

If the legislature intended the sanction to be civil, then the second question is whether the sanction in purpose or effect is nonetheless so punitive that it can only be regarded as punishment. It is at this stage that the *Mendoza-Martinez* factors come into play. In the words of the high court:

"Even in those cases where the legislature 'has indicated an intention to establish a civil penalty, we have inquired further whether the statutory

scheme was so punitive either in purpose or effect,' [citation] as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty,' [citation].

"In making this latter determination, the factors listed in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 [83 S.Ct. 554, 567-568, 9 L.Ed.2d 644] (1963), provide useful guideposts, including: (1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as a punishment'; (3) 'whether it comes into play only on a finding of scienter'; (4) 'whether its operation will promote the traditional aims of punishment—retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.' It is important to note, however, that 'these factors must be considered in relation to the statute on its face,' [citation] and 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." (*Hudson* v. *United States, supra*, 522 U.S. 93, 99-100 [118 S.Ct. 488, 493, 139 L.Ed.2d 450]; accord, *Kansas* v. *Hendricks, supra*, 521 U.S. 346, 361-362 [117 S.Ct. 2072, 2081-2082]; *United States* v. *Ursery, supra*, 518 U.S. 267, 288 [116 S.Ct. 2135, 2147] ["Second, we turn to consider whether the proceedings are so punitive in fact as to 'persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite Congress' intent."], 291; *United States* v. *One Assortment of 89 Firearms, supra*, 465 U.S. 354, 362 [104 S.Ct. 1099, 1104-1105]; *United States* v. *Ward, supra*, 448 U.S. 242, 248 [100 S.Ct. 2636, 2641].)

Thus, the lead opinion errs when it concludes that the *Mendoza-Martinez* factors have no application in deciding under this second prong whether a putatively civil sanction is nonetheless punishment. (Lead opn., *ante*, at pp. 795-796, fn. 5; see *Hudson* v. *United States, supra*, 522 U.S. 93, 99-100 [118 S.Ct. 488, 493]; *Kansas* v. *Hendricks, supra*, 521 U.S. 346, 362 [117 S.Ct. 2072, 2082]; *United States* v. *Ursery, supra*, 518 U.S. 267, 291 [116 S.Ct. 2135, 2148-2149]; *United States* v. *One Assortment of 89 Firearms, supra*, 465 U.S. 354, 365 [104 S.Ct. 1099, 1106]; *United States* v. *Ward, supra*, 448 U.S. 242, 249-250 [100 S.Ct. 2636, 2641-2642].) The lead opinion's assertion that the two-prong ex post facto punishment test can be applied without deciding whether the *Mendoza-Martinez* factors apply to ex post facto cases ignores that the *Mendoza-Martinez* factors are a central part of the second prong of that test.

II

Applying the United States Supreme Court's two-part test of punishment to this case, the first question is whether our Legislature intended the

proceedings in which the registration requirement is imposed to be criminal or civil. Here, the registration requirement was imposed in defendant's criminal proceeding. Ordinarily, this would indicate that the Legislature intended the requirement to be a form of criminal punishment. It appears a novel question whether a sanction imposed in a criminal proceeding can nonetheless *not* be punishment; the United States Supreme Court's case law on punishment has generally dealt with the converse question—when is a penalty imposed in a civil proceeding nonetheless punishment.

The purpose of the high court's two-part test of punishment, however, seems to be to divine the true character of the sanction in question. Legislative intent is a powerful indication of the character of the sanction; if a legislature intended it as punishment it probably is punitive. And legislative intent as to the nature of the proceeding by which the sanction is to be imposed is ordinarily a strong proxy for legislative intent as to the character of the sanction itself. If the legislature intended the sanction to be imposed in a criminal proceeding it probably intended the sanction to be punitive. Probably, but not necessarily. In *People* v. *McVickers* (1992) 4 Cal.4th 81 [13 Cal.Rptr.2d 850, 840 P.2d 955], this court concluded that an AIDS testing requirement imposed in the course of the defendant's criminal proceedings was not punishment for ex post facto purposes.

Here, likewise, it seems that our Legislature, having decided to extend registration at the discretion of the sentencing court to all sexually motivated crimes, made the registration determination part of the criminal proceeding not because it intended it to be an additional punishment for the crime but because, given that the determination turns on the facts of the underlying crime, it is far more efficient to make the determination as part of the criminal proceeding than in a separate civil proceeding (e.g., of the type used in *Kansas* v. *Hendricks, supra,* 521 U.S. 346, to civilly commit sex offenders at the end of their penal sentences).

I pass to the second prong of the test—whether the sanction is so punitive it can only be regarded as punishment. On balance, I conclude it is not. On the one hand, it is sophistic to assert as the People do that the registration is purely regulatory and not punitive. As the high court has explained, "the two primary objectives of criminal punishment" are "retribution" and "deterrence." (*Kansas* v. *Hendricks, supra,* 521 U.S. 346, 361-362 [117 S.Ct. 2072, 2082].) We have said that one purpose of the registration requirement is " ' "controlling crime and preventing recidivism" ' " (*Wright* v. *Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101]; see lead opn., *ante,* at p. 796)—in other words, deterrence. Part of this deterrence arises from the substantial lifetime burden that registration imposes on

sex offenders. Further increasing that burden are the recently created provisions for public disclosure of the identity of most registered offenders (but not those who, like defendant, are subject to registration only by virtue of Penal Code section 290, subdivision (a)(2)(E)). When, as here, the "regulatory" purpose is deterrence and the deterrent effect arises from the burdens imposed on the offender, then "regulation" becomes indistinguishable from punishment.

On the other hand, a second purpose we have identified for the registration requirement, making sex offenders available for police surveillance (*Wright* v. *Superior Court, supra*, 15 Cal.4th 521, 527), seems more aimed at ferreting out crime after it has occurred than deterring its commission, and thus is not punitive. (Requiring automobile owners to register their vehicles aids in the detection of crime, but that does not make registration punitive.) Whatever punitive aspects the statute may have, they do not seem so overwhelming as to turn registration into a form of punishment. This is especially true in light of the high court's conclusion in *Kansas* v. *Hendricks, supra*, 521 U.S. 346, 362 [117 S.Ct. 2072, 2082], that the civil commitment of sex offenders is not punishment. It is hard to imagine how requiring a sex offender to file an address report could be punishment when physically confining the same offender beyond the end of his criminal sentence is not.

Application of the *Mendoza-Martinez* factors listed above also supports the conclusion that registration is not punishment. (See *Kennedy* v. *Mendoza-Martinez, supra*, 372 U.S. 144, 168-169 [83 S.Ct. 554, 567-568].) Registration, although burdensome, does not seem to involve an affirmative disability or restraint, for it does not prevent the registrant from doing anything he could otherwise do. Government registration, at least in the abstract and considered apart from the shaming function of public disclosure, has not historically been regarded as a punishment.[1] Registration does not solely promote retribution and deterrence, the traditional aims of punishment. There is an alternative purpose—police access to known sex offenders after a sex crime has been committed—to which the registration requirement may rationally be connected. Finally, the registration requirement does not appear excessive in relation to the alternative purpose. Two other factors weigh in

---

[1]Cases, unlike this one, in which defendant's identity as a registered sex offender is open to widespread public disclosure would present significantly different issues in determining whether registration is punishment for either ex post facto or cruel and unusual punishment purposes. Public shaming of offenders has long been viewed as a form of punishment. (See generally, Whitman, *What is Wrong With Inflicting Shame Sanctions?* (1998) 107 Yale L.J. 1055; Kahan, *What Do Alternative Sanctions Mean?* (1996) 63 U. Chi. L.Rev. 591, 630-653; Massaro, *Shame, Culture, and American Criminal Law* (1991) 89 Mich. L.Rev. 1880, 1942-1943.) This case presents no occasion to decide whether public disclosure of a sex offender's identity amounts to punishment for ex post facto purposes.

the opposite direction—registration comes into play only on a finding of scienter, and the behavior to which it applies is already a crime—but these factors do not seem sufficient to turn registration into punishment.

## III

As I have explained, the ex post facto test of punishment incorporates the *Mendoza-Martinez* factors and differs from the Eighth Amendment test of punishment. This understanding of the ex post facto punishment test makes clear why *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216], the decision the Court of Appeal relied upon to conclude that sex offender registration is punishment for ex post facto purposes, does not govern this case. At issue in *Reed* was the constitutionality of the sex offender registration requirement as applied to persons convicted of misdemeanor violations of Penal Code section 647, subdivision (a), a prohibition of lewd conduct in public places. This court in *Reed* applied the *Mendoza-Martinez* factors to conclude that registration is punishment for purposes of the prohibition against cruel or unusual punishment in article I, section 17 of the California Constitution, the state constitutional analogue of the Eighth Amendment. It further concluded that this punishment was cruel or unusual as applied to section 647, subdivision (a) misdemeanor offenders.

For the reasons stated above, I disagree with *Reed*'s conclusion that under the *Mendoza-Martinez* factors sex offender registration is punishment. This does not, however, mean that *Reed* was incorrect in holding that registration is punishment for purposes of article I, section 17 of the California Constitution. Given the holding in *Austin* v. *United States, supra*, 509 U.S. 602, that for Eighth Amendment purposes the concept of punishment is broader than the *Mendoza-Martinez* definition, it is possible for a sanction to be punishment under the Eighth Amendment or its state constitutional equivalent in article I, section 17 and yet not be punishment under the *Mendoza-Martinez* factors. Thus, my analysis does not call *Reed*'s holding into question.[2]

### Conclusion

Although I conclude, as does the lead opinion, that the registration requirement imposed on defendant is not punishment for ex post facto purposes, I reach that result by the route set forth above. Most significantly, unlike the lead opinion I do not rely on the Eighth Amendment punishment

[2]Although Penal Code section 647, subdivision (a), the crime at issue in *Reed*, is no longer an automatically registrable offense under Penal Code section 290, it continues to be registrable at the discretion of the sentencing court under the catchall provision of section 290, subdivision (a)(2)(E).

case of *Austin* v. *United States, supra,* 509 U.S. 602, and I do rely on the factors set forth in *Kennedy* v. *Mendoza-Martinez, supra,* 372 U.S. 144. Finally, I agree that the case should be remanded to the Court of Appeal for it to consider in the first instance whether the trial court, in accordance with Penal Code section 290, subdivision (a)(2)(E), adequately stated its reasons for imposing the registration requirement.

Werdegar, J., and Brown, J., concurred.

**MOSK, J.**—I dissent. This court has long concluded, in a variety of different contexts, that sex offender registration is a form of punishment. Today, the court concludes to the contrary, and therefore holds that such a requirement may be imposed retrospectively without violating the ex post facto clause of the federal and California Constitutions (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9). Focusing on the United States Supreme Court's definition of "punishment," it concludes the sex offender registration requirement is nonpenal, essentially because the Legislature has not professed an intention to punish. But as the lead opinion itself states, "*two* factors appear important in each case: whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in *nature or effect* that it must be found to constitute punishment despite the Legislature's contrary intent." (Lead opn., *ante,* at p. 795, italics added.) The lead opinion,[1] however, all but ignores the second factor. Accordingly, its analysis is one-sided and its conclusion is contrary to precedent and basic ex post facto principles.

At the outset, it is important to recognize the narrowness of the issue in this case. California has had a sex offender registration law since 1947. (Stats. 1947, ch. 1124, § 1, p. 2562.) For many years, those who have committed various forms of sexual assault, child molestation, and other such serious offenses have been subject to these registration laws. The Legislature may expand, within the boundaries of the constitutional prohibition against cruel and unusual punishment (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17; *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216] (*Reed*)), the scope of the registration laws. The question in this case is whether the registration requirement may be *retroactively* imposed, not on anyone who has committed any of the offenses long enumerated in Penal Code section 290,[2] but rather on one who fits into a recently created catchall category of offenders. That category provides for mandatory registration "if

---

[1] Reference to the "lead opinion" includes the concurring and dissenting opinion to the extent it agrees with the lead opinion.

[2] All statutory references are to the Penal Code unless otherwise indicated.

the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (§ 290, subd. (a)(2)(E).) Thus, this case will directly affect only a relatively small group of offenders, those who fit into the catchall category, and who committed their offenses before section 290, subdivision (a)(2)(E) was enacted but are sentenced after that enactment.

In *Collins* v. *Youngblood* (1990) 497 U.S. 37, 41 [110 S.Ct. 2715, 2718, 111 L.Ed.2d 30], the high court stated: "Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." Accordingly, under the ex post facto clause "Legislatures may not retroactively alter the definition of crime or *increase the punishment for criminal acts*." (*Id.*, at p. 43 [110 S.Ct. at p. 2719], italics added.) As this court recently explained: "The primary purpose of the constitutional guarantee is to ensure that the consequences of a particular *course of conduct* can be meaningfully assessed in advance, without fear that the rules of criminality and punishment will later change." (*People* v. *Frazer* (1999) 21 Cal.4th 737, 760 [88 Cal.Rptr.2d 312, 982 P.2d 180], italics in original.) The fair warning for the penal consequences of one's conduct that the ex post facto clause requires is "fundamental to our concept of constitutional liberty." (*Marks* v. *United States* (1977) 430 U.S. 188, 191 [97 S.Ct. 990, 993, 51 L.Ed.2d 260].)

It is evident that the imposition of a lifelong sex offender registration requirement changes the rules of punishment and precludes the meaningful assessment of "a particular course of conduct." For this reason, we have consistently held that in order for a guilty plea to be deemed knowing and intelligent, a defendant must be informed of any such registration requirements. (*People* v. *McClellan* (1993) 6 Cal.4th 367, 376 [24 Cal.Rptr.2d 739, 862 P.2d 739]; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086]; *In re Birch* (1973) 10 Cal.3d 314, 321-322 [110 Cal.Rptr. 212, 515 P.2d 12] (*Birch*).) As we explained: "Under Penal Code section 290, a person convicted of one of the enumerated offenses . . . must register for life with the police department in the city in which he lives. He must reregister whenever he moves and must report each change of address within 10 days.[3] Individuals convicted of one of the enumerated

---

[3]Since our decision in *Birch*, section 290 has been amended to impose on individuals subject to sex offender registration the additional burden of annual reregistration. (§ 290, subd. (a)(1)(C); Stats. 1994, ch. 865, § 1.) This is to say nothing of the recently added public notification provisions of section 290, subdivisions (m) and (n) and section 290.4, which, as the lead opinion acknowledges, are not at issue in this case. (Lead opn., *ante*, at p. 796, fn. 6.)

crimes have been deemed by the Legislature to have a propensity to commit such antisocial crimes in the future and thus are the subject of continual police surveillance. Whenever any sex crime occurs in his area, the registrant may very well be subjected to investigation. Although the stigma of a short jail sentence should eventually fade, the ignominious badge carried by the convicted sex offender can remain for a lifetime." (*Birch, supra,* 10 Cal.3d at pp. 321-322.)

Thus in *Birch, supra,* 10 Cal.3d at page 322, we concluded that a defendant's guilty plea without the assistance of counsel was invalid because "we cannot believe that he was aware that as a consequence of urinating in a parking lot at 1:30 in the morning he would be required to register as ·a *sex offender*" and that "[c]ertainly counsel would have advised him of this grave and direct consequence of his guilty plea." (Italics in original.) Our conclusion· in *Birch* and the other cases cited above was based on the de facto recognition of sex offender registration as a form of punishment. How can it be that we do not regard a defendant entering a plea agreement to have done so knowingly and intelligently if he is not notified of the sex offender registration requirement, but we do not consider advance notice of these requirements necessary for a "meaningful assessment" of "a particular course of conduct" under the ex post facto clause of the United States and California Constitutions?

In *Kelly* v. *Municipal Court* (1958) 160 Cal.App.2d 38 [324 P.2d 990] (*Kelly*), the court considered whether the sex offender registration requirement was one of the "penalties and disabilities resulting from the offense of which [a defendant] has been convicted" that may be discharged upon fulfillment of the conditions of probation under section 1203.4. In concluding affirmatively, the court stated: "The duty to reregister upon changing one's place of address is a continuing duty, a burden which the convicted person carries with him until his dying day. Being thus severely limited in his freedom of movement and continuously under police surveillance, all stemming from the conviction which has been set aside, the conclusion seems irresistible that this registration requirement is one of the 'penalties and disabilities resulting from the offense or crime of which he has been convicted' . . . ."[4] (160 Cal.App.2d at p. 41.)

*Reed, supra,* 33 Cal.3d 914, contains the most extensive discussion ·of the question of the punitive nature of sex offender registration and for that

---

[4]The Legislature later added section 290.1 to provide that the registration requirement may not be discharged through the procedures of section 1203.4. (Stats. 1981, ch. 105, § 1, p. 794.) This legislative amendment does not alter the relevance for purposes of constitutional analysis of the *Kelly* court's conclusion that this requirement is indeed a penalty or disability.

reason will be discussed at length. In that case, we held that the imposition of sex offender registration on a misdemeanant convicted under section 647, subdivision (a) for soliciting sex in a public restroom violates the cruel or unusual punishment clause of the California Constitution, article I, section 17. Before considering whether the requirement was "cruel or unusual," we first had to answer the question whether the registration requirement was "punishment." (33 Cal.3d at p. 919.)

In addressing this question, the *Reed* court cited the test set forth in *Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144 [83 S.Ct. 554, 9 L.Ed.2d 644] (*Mendoza-Martinez*), for whether a nominally civil sanction was in fact punitive: "[T]he United States Supreme Court enumerated the following factors for consideration on this issue: 'Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment— retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.' " (*Reed, supra*, 33 Cal.3d at p. 920.)

Applying this test, the *Reed* court first determined, "that such registration is an 'affirmative disability or restraint,' " citing language in *Kelly* and *Birch* quoted above regarding the onerous nature of the requirement. (*Reed, supra*, 33 Cal.3d at p. 920.) The *Reed* court added: "Similarly, albeit in a different context, Justice Kaus has characterized the sex offender registration requirement as follows: 'Apart from the bother and loss of privacy which mere registration entails, the "ready availability" to the police, if it serves its purpose, presumably means a series of command performances at lineups.' [Citation.] Needless to emphasize, law enforcement 'command performances' involve compulsion and restraint." (*Ibid.*, fn. omitted.)

Continuing our consideration of the *Mendoza-Martinez* factors, we stated: "The fact that sex offender registration may not have 'historically been regarded as punishment' is not dispositive. The *Mendoza-Martinez* opinion sets out a number of relevant considerations, not a checklist of absolute requirements. Furthermore, in *Trop* v. *Dulles* (1958) 356 U.S. 86 [2 L.Ed.2d 630, 78 S.Ct. 590], the Supreme Court invalidated the penalty of denationalization imposed for wartime desertion. The court denied that the government has 'a license . . . to devise any punishment short of death within the limits of its imagination. . . . [¶] . . . Fines, imprisonment, and even execution may be imposed depending upon the enormity of the crime, but

any technique outside the bounds of these traditional penalties is constitutionally suspect.' [Citation.]

"Similarly in *Weems* v. *United States* (1910) 217 U.S. 349 [54 L.Ed. 793, 30 S.Ct. 544], the high court stressed the severity of the nonphysical punishment imposed. Though no doubt influenced in its decision by the harshness of the physical punishment, the court also addressed the postimprisonment penalties: 'His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicile without giving notice to the "authority immediately in charge of his surveillance," and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty.' [Citation.]

"The third, fourth, and fifth factors enumerated in *Mendoza-Martinez* are readily satisfied here. We have interpreted section 647(a) to require lewd intent and specific sexual touching. [Citation.] Thus registration 'comes into play only on a finding of *scienter*.' (372 U.S. at p. 168 [9 L.Ed.2d at p. 661].) Whether or not recidivism is in fact a problem with section 647(a) misdemeanants, the legislative intent was surely to deter recidivism by facilitating the apprehension of past offenders. (*Barrows* v. *Municipal Court* [(1970)] 1 Cal.3d [821,] 825-826 [83 Cal.Rptr. 819, 464 P.2d 483].) And, of course, 'the conduct to which [registration] . . . applies is already a crime.'

"We may also consider, under *Mendoza-Martinez*, whether there exists 'an alternative purpose' to which the punishment 'may rationally be connected.' (372 U.S. at p. 168 [9 L.Ed.2d at p. 661].) Although the Legislature may reasonably have intended that sex offender registration serve as a law enforcement tool to facilitate criminal investigations, it is not clear that the measure is effective in practice. Moreover, the fact that a minimal or 'rational' basis may underlie the legislation is outweighed here by the fact that the penalty of registration is '*excessive* in relation to the alternative purpose assigned' to it." (*Reed*, *supra*, 33 Cal.3d at pp. 921-922, fn. omitted.)

For all of these reasons we concluded "that the sex offender registration compelled by section 290 is a form of punishment within the meaning of

article I, section 17, of the [California] Constitution." (*Reed, supra,* 33 Cal.3d at p. 322.)

The lead opinion attempts to distinguish *Reed*. It points out that our conclusion in *Reed* that sex offender registration was excessive in relation to the alternative, nonpunitive purpose assigned to it was based on our doubt about whether sex offender registration was effective in practice, which in turn was based in part on concessions in the amicus curiae brief of the Los Angeles City Attorney. The city attorney had advised this court of his opinion that registration of misdemeanants overloaded computers with useless information and made it more difficult to identify more serious sex offenders. (*Reed, supra,* 33 Cal.3d at p. 922, fn. 7.) The lead opinion implies that the fact no comparable concession can be found in this case limits the applicability of *Reed*. But this point has little merit for two reasons: First, the primary focus of our opinion in *Reed* was on the punitive effect or impact of sex offender registration as well as the fact that it is imposed only in connection with criminal conviction. As discussed, the lead opinion barely addresses the punitive effect prong of ex post facto analysis, focusing almost exclusively on legislative intent. Thus, even if the portion of the *Reed* opinion regarding the practical effectiveness of sex offender registration were discounted, *Reed* would still stand for the proposition that the registration requirement was punitive in its impact.

Second, the practical effectiveness of the registration requirement remains in doubt. Since registration is voluntary and police resources are limited, it is questionable whether those who are intent on repeating their offenses will comply with registration laws. Registration has therefore been criticized, as one law enforcement official put it, because it "just keeps honest offenders honest." (Quoted in Comment, *Examining Sex Offender Community Notification Laws* (1995) 83 Cal.L.Rev. 885, 903.) This criticism is borne out by reports of widespread inaccuracy in the sex offender registration databases. (*Id.,* at pp. 900-902 [recounting various reports of 80-90 percent inaccuracy in the addresses of registered sex offenders in various California locations].) Thus, although the emphasis in *Reed* was on the burden and stigma of registration and the connection between the registration requirement and criminal conviction, the fact that substantial questions remain about the practical effectiveness of this requirement also supports the continued viability of *Reed*'s conclusion that sex offender registration is in fact a punitive measure.[5]

---

[5]The Legislature has recently increased the penalty for failure to register in many cases from a misdemeanor to a felony with a maximum of 16 months in a state prison. (Stats. 1996, ch. 908, § 2.) These increased sanctions may improve compliance with the registration law,

The lead opinion also finds *Reed* inapposite because in that case "the central issue was whether the registration requirement was excessive or disproportionate *to the severity of the offenses* committed by the defendant" under the cruel or unusual punishment clause (lead opn., *ante*, at p. 798, italics in original), which is not at issue in this case. But as noted, in order for the *Reed* court to conclude that the registration requirement was an excessive or disproportionate punishment in relation to the severity of the offense, it first had to conclude, and did conclude, that the registration requirement was a form of punishment. (*Reed, supra*, 33 Cal.3d at p. 922.) This foundational conclusion cannot be squared with the court's holding in the present case.

The lead opinion also contends that "reexamination of the decision in *Reed* in light of . . . more recent cases," leads to the conclusion that *Reed* should be disapproved at least in part. (Lead opn., *ante*, at p. ·798.) The two cases cited by way of example, *People* v. *McVickers* (1992) 4 Cal.4th 81 [13 Cal.Rptr.2d 850, 840 P.2d 955] and *Kansas* v. *Hendricks* (1997) 521 U.S. 346·[117 S.Ct. 2072, 138 L.Ed.2d 501] (*Hendricks*), do not support the lead's position. In *McVickers*, we upheld against an ex post facto challenge a statute, section 1202.1, that requires every person convicted of various sexual offenses to submit to a blood test for acquired immune deficiency syndrome (AIDS). The lead opinion emphasizes our conclusion in that case that AIDS testing under these circumstances "has a legitimate nonpunitive . . . purpose" (*McVickers, supra*, 4 Cal.4th at p. 89), and that the sex offender registration statute has such a purpose. But just as central to our holding in *McVickers* was the conclusion that the burden imposed upon the defendant was minimal. "It is well settled that the physically intrusive effects of drawing blood for a test are slight. 'The blood test procedure has become routine in our everyday life.' [Citation.] . . . [¶] The strictly limited disclosure provisions of the statute likewise do not have the effect of punishment. Defendant's fears of social ostracism if he tests positive for the AIDS virus and the result of his test becomes known are unwarranted. Until such time as he becomes a repeat offender, the test result will be disclosed to no one other than defendant and his attorney. It will be recorded at the state's Department of Justice but only for use by the prosecutor in connection with a future criminal offense." (*Id.* at p. 88.) In contrast to this onetime minimal intrusion of drawing blood and being tested, confidentially, for

---

although recidivists still have a strong incentive to evade that law. But the fact that the failure of a sex offender to regularly report his whereabouts to the police now results in an additional felony conviction lends further support to the conclusion that, in terms of its effect, section 290 is indeed a punitive measure, i.e., the kind of consequence of criminal activity that, under the ex post facto clause, an individual should be notified of in advance in order to meaningfully assess his course of conduct.

AIDS, a defendant subject to section 290 bears the lifetime burden of informing police of his presence and being subject to continuing police surveillance.

In *Hendricks*, the court considered a statute that authorized the civil commitment of a person convicted of a "sexually violent offense," when it is proven beyond a reasonable doubt that the person " 'suffers from a mental abnormality or personality disorder which makes a person likely to engage in the predatory acts of [such] sexual violence.' " (521 U.S. at p. 352 [117 S.Ct. at p. 2077].) Civil commitment could also be brought against those charged with a sexually violent offense who have been found incompetent to stand trial, or have been found not guilty by reason of insanity or some other mental disease or defect. (*Ibid.*) The commitment is reviewed annually to determine if continued detention is warranted. (*Id.* at p. 353 [117 S.Ct. at pp. 2077-2078].) The court reasoned that this statutory scheme did not differ appreciably from other civil commitment statutes that had long been regarded as nonpunitive. (*Id.* at pp. 356-357 [117 S.Ct. at pp. 2079-2080].) The court emphasized the disjunction between past criminal liability and commitment under the statute. Prior criminal conduct "is used solely for evidentiary purposes, either to demonstrate that a 'mental abnormality' exists or to support a finding of future dangerousness . . . . In addition, the Kansas Act does not make a criminal conviction a prerequisite for commitment—persons absolved of criminal responsibility may nonetheless be subject to confinement under the Act." (*Id.* at p. 362 [117 S.Ct. at p. 2082].) Furthermore, citing *Mendoza-Martinez*, the court found the existence of "a scienter requirement is customarily an important element in distinguishing criminal from civil statutes," and concluded that in the case of the Kansas statute "no finding of scienter is required to commit an individual who is found to be a sexually violent predator; instead, the commitment determination is based on a 'mental abnormality' or 'personality disorder' rather than on one's criminal intent." (*Ibid.*)

By contrast, the sex offender registration statute applies only to those convicted of criminal offenses. Moreover, in the present case it is imposed on one who commits an offense under "sexual compulsion or for purposes of sexual gratification," and is therefore contingent on a finding of scienter. Thus, although civil commitment can certainly be as disabling a form of restraint as incarceration, its disjunction from criminal liability in *Hendricks* makes that case inapposite to the present one.

In short, I am not persuaded that our consistent conclusion in *Reed, McClellan, Birch,* and other cases that the lengthy sex offender registration requirement is a penal sanction, was incorrect. Therefore, to impose such a

sanction retroactively violates that most basic guarantee found in the ex post facto clause that a person be notified in advance of the penal consequences of his actions. For this reason, I would affirm the judgment of the Court of Appeal.