[No. C054589. Third Dist. Nov. 8, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE MICHELLE PRESLEY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IB and II of the Discussion.

## COUNSEL

Deborah Prucha, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stan Cross and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—Defendant Bruce Michelle Presley was charged with assault with intent to commit rape (count one), felony false imprisonment (count two), assault with intent to commit a sexual crime (count three), and assault likely to produce great bodily injury (count four). A jury found defendant guilty of count two as charged and found him guilty of three misdemeanor simple assaults as lesser included offenses of counts one, three, and four. Defendant received the midterm of two years in state prison for false

imprisonment, with the assault sentences for counts one, three, and four to be served concurrently. The trial court also ordered defendant to register as a sex offender pursuant to Penal Code[1] section 290, subdivision (a)(2)(E) for the false imprisonment offense. The court ordered registration because it specifically found that the "uncontrovert[i]ble and credible evidence" proved that the false imprisonment was committed and motivated by sexual compulsion or for purposes of sexual gratification.

Defendant claims the sex offender registration requirement violates his Sixth Amendment rights under the federal Constitution because the facts underlying the trial court's order were not submitted to a jury or found beyond a reasonable doubt. Additionally, defendant claims the sentences on counts three and four constitute multiple punishment in violation of section 654 because the assaults were incidental to the false imprisonment offense (count two). We agree only as to this latter claim.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 9:00 a.m. on March 9, 2006, defendant arrived at the home of Sherry W. Defendant and Sherry W. had been friends for six years and had drunk beer together at her house the day before. Sherry W. willingly admitted defendant into her home after he told her he had been partying all night. Sherry W. suggested defendant shower and then take a nap in her back room. Defendant napped for a while, awoke around 11:00 a.m., and went into the living room to join Sherry W. Shortly after 11:00 a.m., Sherry W. told defendant she was going to change the linens on her bed and she went into her bedroom. When Sherry W. turned around to leave the bedroom, defendant was standing in the doorway. Defendant pushed Sherry W. with two hands and said, "Get back in there." "I'm going to do you like your man do you." Sherry W. asked defendant what those words meant and defendant responded, "I'm going to take it." Sherry W. replied, "no, no, don't," "I'm not going to do that," walked past defendant, and went into the kitchen. Defendant went into the living room and sat down.

Around 12:00 noon, Sherry W. went into the living room to get her cordless phone. She told defendant that she was going to call her cousin Buster. When defendant heard the name "Buster," he jumped up, grabbed Sherry W. by the neck and shirt and said, "Bitch, you are not going to call nobody. You [sic] not going to tell nobody what I did."

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant and Sherry W. struggled in the front doorway of the house. Trying to get outside, Sherry W. fell down on the front porch and kicked and scratched at defendant as he attempted to pull her back into the house. Defendant grabbed her hair, removing her artificial ponytail and a chunk of her real hair. Defendant also grabbed Sherry W.'s left breast and her T-shirt. He then tore her T-shirt off, leaving her naked from the waist up. Sherry W. then got away from defendant and ran to the nearby DMV (Department of Motor Vehicles) office where she was brought inside and given clothing.

The prosecution charged defendant with one count of assault with intent to commit rape (count one) for the encounter in Sherry W.'s bedroom, and felony false imprisonment (count two), assault with intent to commit a sexual crime (count three), and assault likely to produce great bodily injury (count four) for the struggle in the front doorway. A jury found defendant guilty of count two as charged and found him guilty of three misdemeanor simple assaults as lesser included offenses for counts one, three, and four.

## DISCUSSION

### I

*Defendant Fails to Establish That the Public Notification and Residency Requirements of the Sex Offender Registration Laws Are Punishment for Purposes of the Sixth Amendment*

Defendant claims that the public notification requirement and residency restrictions imposed by the sex offender registration laws increase his punishment beyond the permissible range. For this reason, defendant contends that the facts underlying his registration must be found by a jury as required by *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]. In *Blakely*, the United States Supreme Court held that any fact increasing the penalty for a crime outside the standard sentencing range had to be submitted to a jury and proved beyond a reasonable doubt. (*Id.* at p. 301 [159 L.Ed.2d at p. 412].) The Sixth Amendment protections discussed in *Blakely* attach only if the facts found by the judge result in an increase in defendant's punishment. (*Blakely*, at pp. 301, 313 [159 L.Ed.2d at pp. 412, 420].) Since the facts supporting defendant's registration were found by the judge, defendant's Sixth Amendment rights are violated unless the conse-

quences of sex offender registration are not punishment. (See *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 455, 120 S.Ct. 2348].)

In *Smith v. Doe* (2003) 538 U.S. 84 [155 L.Ed.2d 164, 123 S.Ct. 1140], the United States Supreme Court set forth the framework for determining whether a statutory scheme is civil and regulatory or punitive. The court affirmed a two-pronged test that first asks whether the legislative body intended a scheme to be punitive and, second, whether the scheme is punitive in nature or effect despite the legislative intent. (*Id.* at pp. 92–93 [155 L.Ed.2d at pp. 176–177].) To evaluate the effects of a statutory scheme, a court must consider seven factors originally developed in *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168 [9 L.Ed.2d 644, 660–661, 83 S.Ct. 554]. These factors, which are " 'neither exhaustive nor dispositive,' " determine whether a scheme has been regarded in our history and traditions as punishment, imposes an affirmative disability or restraint, promotes the traditional aims of punishment, has a rational connection to a nonpunitive purpose, is excessive with respect to this purpose, comes into play only on a finding of scienter, and applies to behavior which is already a crime. (*Smith*, at pp. 97, 105 [155 L.Ed.2d at pp. 179–180, 185].) Applying this two-pronged test and the *Mendoza-Martinez* factors, the United States Supreme Court upheld an Alaska statute mandating sex offender registration for certain convicted individuals. (*Smith v. Doe, supra*, 528 U.S. at pp. 89, 105 [155 L.Ed.2d at pp. 174, 185].) The court decided that the Alaska Legislature intended to create a civil regulatory scheme and the statute was not punitive in nature or effect. (*Smith*, at pp. 105–106 [155 L.Ed.2d at p. 185].)

The California Supreme Court used this same reasoning to conclude that sex offender registration was not punishment for purposes of ex post facto analysis or the prohibition against cruel and unusual punishment. (*People v. Castellanos* (1999) 21 Cal.4th 785 [88 Cal.Rptr.2d 346, 982 P.2d 211]; *In re Alva* (2004) 33 Cal.4th 254 [14 Cal.Rptr.3d 811, 92 P.3d 311].) In *Castellanos*, the court relied primarily on legislative intent and certain *Mendoza-Martinez* factors to explain that California's sex offender registration requirement "serves an important and proper remedial purpose" and is not "so punitive in fact that it must be regarded as punishment." (*Castellanos*, at p. 796.) Similarly, in *Alva*, the court relied heavily on the analysis in *Smith* to find that sex offender registration "is not punishment, but a legitimate, nonpunitive regulatory measure." (*In re Alva, supra*, 33 Cal.4th at p. 280.) Finally, in *People v. Hofsheier* (2006) 37 Cal.4th 1185 [39 Cal.Rptr.3d 821, 129 P.3d 29], the California Supreme Court reaffirmed the role of section 290's sex offender registration requirements, proclaiming that "[t]hese provi-

sions serve an important and vital public purpose." (*Hofsheier*, at p. 1208.) Thus, our federal and state courts have established that a requirement to register as a sex offender is not per se punishment for purposes of the federal Constitution.

Defendant correctly points out that *Castellanos* and *Alva* are not dispositive of the issues presented here. Currently, a registered sex offender's personal information—such as name, address, criminal history, and photograph—may be made available to the public via the Internet. (§ 290.46.) *Castellanos* and *Alva* did not address the constitutionality of this system because the defendants in those cases were not subject to the public notification requirements. In *Castellanos*, the court specifically withheld its opinion "regarding the effect, if any, application of those provisions would have upon [its] analysis." (*People v. Castellanos, supra*, 21 Cal.4th at p. 796, fn. 6.) Likewise, in *Alva*, the court noted that its disposition did not include consideration of the issue because the "public inspection and public notification provisions do not apply to [the defendant]." (*People v. Alva, supra*, 33 Cal.4th at p. 265, fn. 6.) *Hofsheier*, too, does not apply because the issue there was denial of equal protection resulting from varying application of the sex offender registration laws to crimes with similar elements. (*People v. Hofsheier, supra*, 37 Cal.4th at p. 1193.) Further, *Castellanos, Alva*, and *Hofsheier* were decided before the new sex offender residency requirements were enacted. Accordingly, the only law, to date, interpreting the new restrictions are those cases holding that the residency requirements are not retroactive, and that issue is not presented here. (*Doe v. Schwarzenegger* (E.D.Cal. 2007) 476 F.Supp.2d 1178; *Doe v. Schwarzenegger* (N.D.Cal., Feb. 22, 2007, No. C 06-06968 JSW) 2007 U.S.Dist. Lexis 16244.) Consequently, these cases do not resolve the matters before us.

A

*The Public Notification Requirement of Sex Offender Registration Is Not Punishment*

The issue of notifying the public of a sex offender's registration came before the United States Supreme Court in *Smith*. (*Smith v. Doe, supra*, 538 U.S. at p. 84 [155 L.Ed.2d at p. 164].) There, an Alaska statute allowed law enforcement to make publicly accessible via the Internet a registered sex offender's name, aliases, home address, photograph, place of employment,

crime for which convicted, length and conditions of sentence, and a statement of whether the offender was in compliance with registration and could be located, as well as other information. (*Id.* at p. 91 [155 L.Ed.2d at pp. 175–176].) Having established that the legislative intent was not punitive, the court used the *Mendoza-Martinez* factors to determine whether the statute was punitive in nature or effect. (*Smith,* at p. 97 [155 L.Ed.2d at pp. 179–180].)

Applying the *Mendoza-Martinez* factors to the sex offender registration statute, the court found that the statutory scheme served a legitimate, nonpunitive objective; did not resemble traditional forms of punishment; did not impose a physical restraint or disability; had a rational connection to a nonpunitive purpose; and was not excessive in relation to the statute's purpose. (*Smith v. Doe, supra,* 538 U.S. at pp. 94, 97, 99–100, 102–106 [155 L.Ed.2d at pp. 178, 180, 181, 183–185].) Although the court used these factors to determine what constitutes punishment for purposes of ex post facto analysis, the court commented that the *Mendoza-Martinez* factors "have their earlier origins in cases under the Sixth . . . Amendment[]" and "are designed to apply in various constitutional contexts." (*Smith,* at p. 97 [155 L.Ed.2d at p. 179].) Therefore, the conclusions in *Smith* would also be true for purposes of the Sixth Amendment.

■ The court's analysis of the Alaska statute is particularly relevant since California's public notification statutes are quite similar. Like Alaska, California permits the Department of Justice to make available to the public via the Internet a registered sex offender's name and known aliases, photograph, physical description, date of birth, criminal history, the address at which the person resides, and any other information the department deems relevant. (§ 290.46, subd. (b)(1).) Unlike Alaska, California does not publicize the name and/or address of the sex offender's employer or the person's criminal history other than the specific crimes for which the person is required to register. (§ 290.46, subd. (a)(1).) Thus, the court's decision and analysis in *Smith* is on point with the issue here.

Defendant attempts to distinguish his case from *Smith* by emphasizing that the sex offenders in *Smith,* unlike defendant, had been convicted of a *listed sex offense* requiring *mandatory* registration without any additional finding by the court. (*Smith v. Doe, supra,* 538 U.S. at p. 91 [155 L.Ed.2d at p. 176].) Although this distinction is accurate, defendant fails to demonstrate why it is material. The punishment analysis in *Smith* did not rely on the fact that the

defendants had been tried by a jury and convicted of a specified sex offense. (See *id*. at p. 92 [155 L.Ed.2d at p. 176].) Nevertheless, defendant relies on a single sentence in *Smith* that the "consequences [of Alaska's statute] flow not from the Act's registration and dissemination provisions, but from the fact of conviction." (*Id*. at p. 101 [155 L.Ed.2d at p. 182].) Defendant contends, then, that since the consequences of registration and public notification, for him, do not flow from "the fact of conviction" based on a jury's verdict but rather from a finding made by the judge alone, sex offender registration is punishment. However, defendant arrives at this conclusion by circular reasoning.

Under *Blakely*, a fact must be found by a jury only if the factual finding increases punishment. (*Blakely v. Washington, supra*, 542 U.S. at p. 303 [159 L.Ed.2d at p. 413].) Defendant's conclusion suggests that the public notification requirement of sex offender registration is punishment because the underlying facts were not found by a jury, even though a jury needs to make the finding only when the fact increases punishment.

█ Although here the facts supporting sex offender registration were found by a judge, the identity of the trier of fact is immaterial to the question of whether public notification is punishment. The court's stated reasons in *Smith* why public notification is not punishment do not change depending on whether the facts supporting registration are found by a judge or by a jury. Further, defendant does not explain why the conclusion offered in *Smith*—mandated registration with public notification is not punitive in nature or effect—is not equally applicable to individuals who are ordered to register as sex offenders based on a finding by a judge. We can see no reason for holding that registration under section 290, subdivision (a)(2)(E) is any more punitive than mandated registration for crimes committed under section 290, subdivision (a)(2)(A).

Based on the United States Supreme Court's ruling in *Smith*, we conclude that the public notification requirements of sex offender registration do not constitute punishment for purposes of the Sixth Amendment.

B, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1027.

## DISPOSITION

The judgment is modified to stay sentence on counts three and four pursuant to section 654. As modified, the judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation.

Nicholson, Acting P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 20, 2008, S159215.