166 Cal.App.4th 1208 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
TIMOTHY ALLEN MILLIGAN, Defendant and Appellant.
No. G039546.
Court of Appeals of California, Fourth District, Division Three.
September 15, 2008.
*1214 Jackie Menaster, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janet Neeley and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
FYBEL, J.

INTRODUCTION
In August 2007, Timothy Allen Milligan pleaded guilty to one count of failing to register as a sex offender in violation of Penal Code former section 290, subdivision (g)(2)[1] and admitted two prior felony convictions suffered in March 1987 for violating former sections 261, subdivision (2) and 289, subdivision (a). The trial court struck one of the two prior convictions and sentenced Milligan to total term of 32 months in prison. In addition, the court ordered Milligan to submit to DNA testing and to register as a sex offender pursuant to section 290.
Milligan argues various amendments and additions to the sex offender registration laws, enacted since his initial duty to register commenced in March 1987, when considered collectively constitute punishment and, therefore, would violate the ex post facto clauses of the United States and California Constitutions if retroactively applied to him.
The challenged amendments and additions to the sex offender registration laws fall into four categories. The first category is the 2003 and 2005 amendments to section 290, which imposed additional registration requirements. The second category is the public access to information and inquiry statutes, sections 290.4 (added in 1994) and 290.46 (added in 2004). These code sections require the Department of Justice to provide a service by which the public can determine whether a person is a sex offender (§ 290.4) and to *1215 maintain a publicly accessible Internet Web site making available certain information about sex offenders (§ 290.46). The third category is the DNA and Forensic Identification Database and Data Bank Act of 1998, section 295 et seq. (the DNA Act), under which sex offenders now must submit DNA samples. The fourth category is the Sexual Predator Punishment and Control Act: Jessica's Law (SPPCA). Approved by California voters in 2006 as Proposition 83, the SPPCA added section 3000.07, amended section 3003.5 to prohibit registered sex offenders from residing within 2,000 feet of any school or park where children regularly gather, and added section 3004, subdivision (b) to require global positioning system (GPS) monitoring of certain defined sex offenders for life.
After reviewing principles of ex post facto law and the challenged amendments and additions to the sex offender registration laws, we address whether each category of the challenged amendments and additions individually would constitute an ex post facto violation if applied retroactively. We conclude Milligan's challenge to the 2005 amendment to section 290, part of the first category, is not ripe for adjudication and, under well-established authority, the other challenged amendments and additions in categories one, two, and three do not constitute punishment. As for the fourth category, the Attorney General, in a letter brief, has confirmed the trial court did not order Milligan to comply with the SPPCA's residency restrictions and GPS monitoring requirements, and has taken the position the SPPCA applies prospectively only and is inapplicable to Milligan. Because he committed the offenses subjecting him to sex offender registration before the SPPCA's effective date, we conclude Milligan is not and will not be subject to the SPPCA's residency restrictions and GPS monitoring requirements.
Next, we consider the 2003 amendment to section 290, the DNA sampling and collection laws, and the public notification and information access laws collectively. Applying the two-part test from Smith v. Doe (2003) 538 U.S. 84 [155 L.Ed.2d 164, 123 S.Ct. 1140], we conclude those laws were not intended to be punitive and are not punitive in nature and effect.
We therefore affirm the judgment, with a proviso that Milligan is not subject to the SPPCA's residency restrictions and GPS monitoring requirements because they do not apply retroactively.

DISCUSSION

I. The Ex Post Facto Clauses
(1) Article I, section 10, clause 1 of the federal Constitution states, in pertinent part: "No state shall . . . pass any . . . ex post facto law . . . ." Article *1216 I, section 9 of the California Constitution similarly states an "ex post facto law . . . may not be passed." The California provision is analyzed in the same manner as its federal counterpart. (People v. Grant (1999) 20 Cal.4th 150, 158 [83 Cal.Rptr.2d 295, 973 P.2d 72].)
(2) The ex post facto clauses of the federal and state Constitutions prohibit enactment of laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." (Collins v. Youngblood (1990) 497 U.S. 37, 43 [111 L.Ed.2d 30, 110 S.Ct. 2715]; see also People v. Grant, supra, 20 Cal.4th at p. 158.) "`An ex post facto law is a retrospective statute applying to crimes committed before its enactment, and substantially injuring the accused. . . .' [Citation.] If a crime is committed before the `effective date' of a statute and the statute retroactively increases the punishment for the crime or eliminates a defense, the statute violates the ex post facto clauses." (People v. Jenkins (1995) 35 Cal.App.4th 669, 672 [41 Cal.Rptr.2d 502].)
(3) In Smith v. Doe, supra, 538 U.S. 84, the United States Supreme Court confirmed a two-part test to determine whether a statutory scheme is punitive for purposes of ex post facto analysis. The court first determines whether the legislature intended to impose punishment: "If the intention of the legislature was to impose punishment, that ends the inquiry." (Id. at p. 92.) If the court determines the legislature intended to enact "a regulatory scheme that is civil and nonpunitive," then the court must determine whether the statutory scheme is "`"so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil."'" (Ibid.) To analyze the effects of the statute, the court must consider seven factors noted in Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144 [9 L.Ed.2d 644, 83 S.Ct. 554]. Those factors, which are "`neither exhaustive nor dispositive,'" are whether the statutory scheme (1) has been regarded in our history and traditions as punishment, (2) imposes an affirmative disability or restraint, (3) promotes the traditional aims of punishment, (4) has a rational connection to a nonpunitive purpose, (5) is excessive with respect to this purpose, (6) comes into play only on a finding of scienter, and (7) applies to behavior which is already a crime. (Smith v. Doe, supra, 538 U.S. at pp. 97, 105; see also People v. Presley (2007) 156 Cal.App.4th 1027, 1032 [67 Cal.Rptr.3d 826].)

II. Amendments and Changes Since 1987 to the Sex Offender Registration Laws
Since March 1987, the sex offender registration laws have been amended to enhance registration requirements, create a public notification and inquiry system, require DNA collection and sampling, and impose residency restrictions and GPS monitoring.
*1217 (4) Section 290 was amended in 2003 so that a person who is required to register as a sex offender must reregister within five working days of changing his or her residence (former § 290, subd. (a)(1)(A)) or establishing a second residence (former § 290, subd. (a)(1)(B)), and had to personally inform the local law enforcement agency in writing within five working days of changing residence within or outside of California (former § 290, subd. (f)(1)). (Stats. 2003, ch. 634, § 1.3.) Section 290 was amended again in 2005 to expressly impose a duty to register on "[a]ny person required to register pursuant to any provision of this section, regardless of whether the person's conviction has been dismissed pursuant to Section 1203.4, unless the person obtains a certificate of rehabilitation and is entitled to relief from registration pursuant to Section 290.5." (Former § 290, subd. (a)(2)(F), added by Stats. 2005, ch. 704, § 1; Stats. 2005, ch. 722, § 3.5.)
(5) Section 290.4, which became operative on July 1, 1995, requires the Department of Justice to operate a service through which members of the public may ask for a determination whether a specific person must register as a sex offender. (§ 290.4, added by Stats. 1994, ch. 867, § 4, p. 4396.) Section 290.46, which became effective September 24, 2004, requires the Department of Justice to make certain information about registered sex offenders available to the public via an Internet Web site. (§ 290.46, added by Stats. 2004, ch. 745, § 1.)
(6) The DNA Act (Stats. 1998, ch. 696, § 2) added sections 295, 295.1, 296, 296.1, and 296.2 to the Penal Code. (See Good v. Superior Court (2008) 158 Cal.App.4th 1494, 1500 [71 Cal.Rptr.3d 125].) "The [DNA] Act required DNA samples from defendants convicted of a number of listed felony offenses, as well as defendants required to register for a felony sex offense pursuant to former section 290." (Ibid.) On November 2, 2004, California voters approved Proposition 69, which made significant amendments to the DNA Act. Proposition 69 amended section 296, subdivision (a) to broaden the scope of persons required to submit DNA samples. (See Good v. Superior Court, supra, 158 Cal.App.4th at p. 1500.) Proposition 69 added section 296.1 to set forth administrative procedures for collecting DNA samples from various classes of persons, including any person required to register under section 290. (§ 296.1, subd. (a); see also § 296, subd. (a)(2)(A).) Proposition 69 expressly made section 296.1, subdivision (a)(2) through (6) retroactive. (§ 296.1, subd. (b).)
(7) California voters approved the SPPCA in 2006 as Proposition 83. The SPPCA prohibits registered sex offenders from residing within 2,000 feet of any public or private school, or park where children regularly gather (§ 3003.5) and requires them to be monitored by GPS while on parole (§ 3000.07) and for life (§ 3004). The SPPCA states: "It is the intent of the *1218 People in enacting this measure to help Californians better protect themselves, their children, and their communities; it is not the intent of the People to embarrass or harass persons convicted of sex offenses." "It is the intent of the People of the State of California in enacting this measure to strengthen and improve the laws that punish and control sexual offenders. It is also the intent of the People of the State of California that if any provision in this act conflicts with any other provision of law that provides for a greater penalty or longer period of imprisonment the latter provision shall apply." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2, subd. (f), p. 127, § 31, p. 138.)

III. Individual Ex Post Facto Analysis of the Challenged Amendments and Additions to the Sex Offender Registration Laws

A. First Category: Sex Offender RegistrationAmendments to Section 290

1. People v. Castellanos

In People v. Castellanos (1999) 21 Cal.4th 785, 788 [88 Cal.Rptr.2d 346, 982 P.2d 211] (Castellanos), the California Supreme Court addressed whether retroactive application of the sex offender registration requirement imposed by former section 290 constituted an ex post facto violation. In that case, the defendant was convicted of burglary and receiving stolen property. (Castellanos, supra, 21 Cal.4th at p. 789.) He was sentenced to a term of 14 years in prison and ordered to register as a sex offender pursuant to section 290 on his release. (Castellanos, supra, 21 Cal.4th at p. 789.) He argued on appeal that requiring him to register as a sex offender violated the ex post facto clauses of the federal and state Constitutions because the provision in section 290 requiring him to register took effect after he committed the offenses for which he was convicted. (Castellanos, supra, 21 Cal.4th at p. 789.)
(8) The Supreme Court concluded the sex offender registration requirement imposed by section 290 did not constitute punishment for purposes of ex post facto analysis, reasoning: "The sex offender registration requirement serves an important and proper remedial purpose, and it does not appear that the Legislature intended the registration requirement to constitute punishment. Nor is the sex offender registration requirement so punitive in fact that it must be regarded as punishment, despite the Legislature's contrary intent. Although registration imposes a substantial burden on the convicted offender, this burden is no more onerous than necessary to achieve the purpose of the statute." (Castellanos, supra, 21 Cal.4th at pp. 788, 796.)
Based on Castellanos, the court in People v. Allen (1999) 76 Cal.App.4th 999, 1001 [90 Cal.Rptr.2d 662] concluded retroactive application of a 1995 *1219 amendment to section 290 imposing lifetime registration on persons discharged or paroled from juvenile commitment did not violate the ex post facto clauses.

2. The 2003 and 2005 amendments to section 290

(9) As Milligan argues, Castellanos did not consider the 2003 and 2005 amendments to section 290, so we will consider each in turn. In applying the first part of the two-part Smith v. Doe test, we have found nothing to indicate the Legislature enacted the 2003 amendment with the intent to impose punishment. (See Castellanos, supra, 21 Cal.4th at p. 796 ["it does not appear that the Legislature intended the registration requirement to constitute punishment"].) Rather, the 2003 amendment to section 290, which requires the sex offender to reregister and notify local law enforcement within five working days of changing residence, was enacted as part of a statutory scheme that is regulatory in nature. (Wright v. Superior Court (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101] ["The statute [section 290] is thus regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts."].)
Section 290's purpose is to make sure convicted sex offenders, who are considered likely to reoffend, are readily available for police surveillance at all times. (Wright v. Superior Court, supra, 15 Cal.4th at p. 527.) The 2003 amendment is rationally connected with, and advances, that nonpunitive purpose by requiring sex offenders to make themselves available for such surveillance within five working days of changing residence or acquiring a second residence. The 2003 amendment does impose an additional burden on sex offenders. But that burden, together with other burdens imposed by section 290, is not "so punitive in fact that it must be regarded as punishment" and is "no more onerous than necessary to achieve the purpose of the statute." (Castellanos, supra, 21 Cal.4th at p. 796.)
(10) Milligan has not shown he will ever be subject to the 2005 amendment to section 290. That amendment imposes a duty to register even when a defendant's conviction has been dismissed pursuant to section 1203.4, unless the defendant obtains a certificate of rehabilitation and is entitled to relief from registration. (Stats. 2005, ch. 704, § 1; Stats. 2005, ch. 722, § 3.5.) Section 1203.4 provides a trial court may permit a defendant to withdraw a guilty plea once the defendant has fulfilled all terms of probation for the full term of probation, and is not currently incarcerated or facing charges for a different offense. (§ 1203.4, subd. (a).) The challenged changes and additions to the sex offender registration laws, other than the 2005 amendment to section 290, have applied or will apply to Milligan automatically when he is released from prison. In contrast, the 2005 amendment will apply to Milligan *1220 only if and when a court permits him to withdraw his guilty plea under section 1203.4 and dismisses the charge. The issue whether the 2005 amendment to section 290 applies retroactively to Milligan therefore is not yet ripe for judicial decision. (See Pacific Legal Foundation v. California Coastal Com. (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].)

B. Second Category: Public Notification and Access to Sex Offender Information

In Smith v. Doe, supra, 538 U.S. at pages 89-90, 105-106, the United States Supreme Court upheld an Alaska statute requiring sex offenders to register with law enforcement and making much of the registration information publicly accessible. The Alaska statute allowed law enforcement to make publicly accessible via the Internet a registered sex offender's name, aliases, home address, photograph, place of employment, crime, length and conditions of sentence, and a statement whether the offender was in compliance with registration requirements and could be located. (Id. at p. 91.) The Supreme Court concluded the Alaska Legislature intended to create a civil, nonpunitive regulatory scheme and the statute was not punitive in effect. (Id. at pp. 96, 105-106.) "Given the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment." (Id. at p. 105.)
Based on Smith v. Doe, the court in People v. Presley, supra, 156 Cal.App.4th at page 1035 concluded the public notification requirements of sex offender registration under section 290.46 did not constitute punishment for purposes of the Sixth Amendment. The Presley court observed, "[t]he court's analysis of the Alaska statute is particularly relevant since California's public notification statutes are quite similar." (People v. Presley, supra, 156 Cal.App.4th at p. 1034.)
(11) California's public notification and access statutes, section 290.4 et seq., therefore do not constitute punishment and would not violate the ex post facto clauses if applied retroactively to Milligan.

C. Third Category: DNA Collection and SamplingThe DNA Act

(12) In People v. Travis (2006) 139 Cal.App.4th 1271, 1293-1295 [44 Cal.Rptr.3d 177], the court upheld DNA collection and sampling under sections 296 and 296.1 against an ex post facto challenge. The court *1221 reasoned, "[t]he imposition of a DNA testing requirement under section 296.1 for felony convictions may constitute a disadvantage or burden, but the statute was neither intended to nor does inflict punishment for commission of the crime. . . . Examination of the DNA sample collection law reveals that it was not enacted to punish convicted felons, but instead to establish a DNA database to assist in the identification, arrest, and prosecution of criminals." (People v. Travis, supra, 139 Cal.App.4th at p. 1295; see also Good v. Superior Court, supra, 158 Cal.App.4th at p. 1510 ["There is no constitutional bar to requiring DNA samples based on a conviction predating Proposition 69, so long as there remains a current requirement to register."].)
We agree with this reasoning and conclude retroactively applying the collection and sampling requirements of the DNA Act is not an ex post facto violation.

D. Fourth Category: The SPPCA

Milligan and the Attorney General submitted letter briefs addressing several issues regarding the SPPCA, including whether its residency restrictions and GPS monitoring requirements apply retroactively.[2] We agree with the Attorney General "the residency restrictions and GPS monitoring requirements apply prospectively only."
(13) Statutes, whether enacted by the Legislature or the voters, operate prospectively unless there is clear evidence to the contrary. (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].) "[I]n the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." (Id. at p. 1209.)
The SPPCA does not have a retroactivity provision. (See Tapia v. Superior Court (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434] [interpreting voter-approved proposition as operating only prospectively where proposition was silent on issue of retroactivity].) In contrast, Proposition 69 *1222 expressly made section 296.1, subdivision (a)(2) through (6) retroactive. (§ 296.1, subd. (b).) The Penal Code expressly states: "No part of [this code] is retroactive, unless expressly so declared." (§ 3.) The Attorney General concedes that "[n]othing in the text of the legislation suggests that any portion of the SPPCA, including the residency restrictions or GPS monitoring requirements, was intended to apply retroactively." We have found nothing in the extrinsic sources evincing a "clear intent" the SPPCA was intended to apply retroactively. (See Doe v. Schwarzenegger (E.D.Cal. 2007) 476 F.Supp.2d 1178, 1182-1183.)
(14) However, while agreeing the SPPCA does not apply retroactively, the Attorney General takes the position "the residency restrictions of the SPPCA only appl[y] to persons who move to a residence within 2000 feet of a school after the effective date of the SPPCA." This assertion misapplies the law of retroactivity. "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was completed before the law's effective date. [Citations.] Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date. [Citations.]" (People v. Grant, supra, 20 Cal.4th at p. 157.)
(15) The last act or event necessary to trigger the SPPCA's residency restrictions and GPS monitoring requirements would be commission of a felony violation of a "`registerable sex offense'" under former section 290, subdivision (a)(2)(A) or an attempt to commit such an offense. (§§ 3000.07, subd. (a), 3003.5, subd. (b), 3004, subd. (b).) Because Milligan committed the offenses for which he must register as a sex offender before the SPPCA's effective date, the SPPCA's residency restrictions and GPS monitoring requirements do not, and cannot ever, apply to him based on those offenses.

IV. Collective Ex Post Facto Analysis of the Challenged Amendments and Additions to the Sex Offender Registration Laws
Having concluded none of the challenged additions and amendments to the sex offender registration laws individually applies retroactively, or would not be an ex post facto violation if retroactively applied to Milligan, we address Milligan's argument these amendments and additions collectively make sex offender registration punitive. We return to the two-part test from Smith v. Doe.
*1223 (16) As to the first part of the test, we find nothing to indicate the Legislature and the voters intended these amendments and additions collectively to constitute punishment. None of them individually was expressly labeled as punitive. The challenged amendments and additions were made piecemeal by legislation or by voter initiative between 1998 and 2005 with no discernible coordinated effort or plan for them as a whole to impose additional punishment on sex offenders. Although the amendments and additions were codified in the Penal Code, "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." (Smith v. Doe, supra, 538 U.S. at p. 94.)
(17) For the second part of the Smith v. Doe test, we treat the 2003 amendment to section 290, the DNA Act (as amended by Prop. 69), and the public access and notification provisions of the sex offender laws as if they were enacted together as a single piece of legislation. Would this legislation be so punitive in nature and effect that it would have to be found to constitute punishment? No. Such legislation would require the sex offender to reregister and notify local law enforcement within five working days of changing residence or acquiring a second residence and to provide a DNA sample, make certain information about the sex offender available online, and permit a member of the public to inquire whether a particular person must register as a sex offender. In Smith v. Doe, supra, 538 U.S. at pages 98-99, the Supreme Court concluded registration and making information publicly accessible historically have not been deemed punitive. Reregistration upon changing residence, DNA sampling, and public access to information about the offender do not impose physical restraint "and so do[] not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." (Id. at p. 100.)
The purpose of the sex offender registration laws is to make convicted sex offenders readily available for police surveillance at all times. The purpose of the DNA sampling and collection laws is to establish a DNA database to assist in the identification, arrest, and prosecution of criminals. (People v. Travis, supra, 139 Cal.App.4th at p. 1295.) The purpose of public notification is "to inform the public for its own safety, not to humiliate the offender." (Smith v. Doe, supra, 538 U.S. at p. 99.) The legislation would have a rational connection to those nonpunitive purposes, and would not be excessive in relation to those purposes. The additional burden on the sex offender of having to reregister and provide a DNA sample is no more onerous than necessary to achieve those purposes. (Castellanos, supra, 21 Cal.4th at p. 796.) Any humiliation the offender might suffer from public notification and access to information "is but a collateral consequence of a valid regulation." (Smith v. Doe, supra, 538 U.S. at p. 99.)

*1224 DISPOSITION
The judgment is affirmed. Milligan is not, and on release from prison will not be, subject to the SPPCA's residency restrictions and GPS monitoring requirements based on the offenses now subjecting him to sex offender registration because he committed those offenses before the SPPCA's effective date.
Rylaarsdam, Acting P. J., and Moore, J., concurred.
NOTES
[1] All statutory references are to the Penal Code. Although section 290 was repealed and replaced by the Sex Offender Registration Act (§ 290 et seq.), effective October 13, 2007 (Stats. 2007, ch. 579, § 8), in this opinion we refer, unless indicated otherwise, to the version of section 290 in effect at the time of Milligan's guilty plea to the current offense.
[2] We invited the parties to submit letter briefs addressing three issues: (1) whether the trial court ordered Milligan to comply with the SPPCA's residency restrictions and GPS monitoring requirements; (2) whether the SPPCA's residency restrictions and GPS monitoring requirements apply retroactively or prospectively only; and (3) whether the SPPCA's residency restrictions and GPS monitoring requirements, if applied to Milligan, would violate the ex post facto clauses of the United States Constitution and the California Constitution. Both the Attorney General and Milligan submitted letter briefs in response.